Good morning. May it please the court. I'm Jerry Brown and I represent the appellant Jeremy Outland in this matter. The issue before this court is a decision of the district court on a motion to suppress evidence. The issue that we're focused on is the motion to suppress statements made to officer Weiss and interrogation questioning of Mr. Outland while he was in prison. The motion was issued on July 19th, 2019 and it should be reversed for the following reasons. First, the statements that Mr. Outland made were not voluntary. He was under the influence of narcotics that he had ingested and medications that he was being administered to reverse the overdose that he had taken. Second, Mr. Outland did not request to speak to law enforcement before he was questioned by officer Weiss. Third, in the district court erred in finding that Mr. Outland made a request to speak with law enforcement and in making that finding, it failed to exercise the standard, every reasonable presumption against the waiver of constitutional rights, the standard articulated cases of Brewer versus Williams and Illinois versus Allen. The district court, in its opinion, going to page 22, it addresses the issue of whether Mr. Outland had requested to speak to law enforcement, although there's some inconsistency in the record. The question that in the record that had been in the transcript that had been posed to Mr. Weiss when he testified was, did, that he was first told that police officer had told him that Mr. Outland wanted to speak, and he was then asked, is it your testimony that he wanted to speak to you? So at one point it appears that they're making a general claim that Mr. Outland wished to speak to law enforcement, and at other times it appears that they're saying he wished to speak to Mr. or officer Weiss specifically. From the evidence of the record, neither occurred. The district court resolved the inconsistency on the issue of whether Mr. Outland requested to speak to law enforcement or to officer Weiss specifically by finding that officer Weiss's testimony was more credible than the testimony of Mr. Outland. And it's clear that the district court has the discretion with weighing the credibility of witnesses testifying before it to make judgments as a credibility, and it's certainly within the district court's discretion to find Mr. or officer Weiss's testimony more credible. However, that's not enough to resolve the issue of whether Mr. Outland had requested to speak to law enforcement. Officer Weiss was not a participant to that conversation. He was not a witness to it, and he's therefore not a competent witness as to whether Mr. Outland ever requested to speak to law enforcement generally or to speak to officer Weiss specifically. The statement that the district court is relying on, therefore, to conclude that Mr. Outland made that request, they're relying on an out-of-court, unsworn statement by a person who's never actually was never even identified by name in the record before the district court. So, whereas if there's a credibility contest between two people who are actually testifying before the court, certainly the court is well within its rights, the district court, to make credibility assessments and value the testimony of one witness over the other. But in this case... Mr. Brown, can I ask you a question on that? Certainly. Detective Weiss in the paperwork, in the police paperwork, says that he responded to St. John's Hospital to speak to your client. One of the things that you don't hear on the tape, and I realized that the tape started when the interview, is you don't hear anything suggesting that your client didn't speak to the police for whatever reason. And the tape, of course, is something that the district court had. And I guess what I'm asking is, in a situation like this where he says, well, I didn't want to talk to the police, and the police say, somebody called me and told me to go to the hospital. I mean, what else is a district court supposed to do other than take testimony, look at what's on the tape, listen to what's on the tape, and then make a finding? We don't dispute what's on the tape. What we are disputing, however, is whether prior to that interview, Mr. Outland had requested to speak to law enforcement. And the district court does recognize that as a potentially significant issue. It is the government's burden to prove that the It is certainly within the government's ability to, one, identify the witness who says that Mr. Outland requested to speak to law enforcement so that he can be questioned in court and subject to cross-examination. The person who says he had this conversation has never been identified. He's given no sworn testimony. We don't know the details or the substance of whatever conversation he had. Do you recall whether Detective Weiss at the hearing testified that he received a call to go to the hospital? The record does show that Officer Weiss says he was informed that Mr. Outland wished to speak. So we're not disputing that Officer Weiss was told that, and the court is well within its right to credit his testimony on that point. The issue is, did Mr. Outland, as he testified, in fact have the conversation requesting to speak to law enforcement? Officer Weiss certainly is competent to testify that someone called him and said that Mr. Outland wished to speak. He's not, however, competent to testify as to whether that underlying conversation took place, what was said in it, and whether it's a proper conclusion based on the substance of that conversation for whoever had it to then conclude that Mr. Outland wished to speak and then therefore call Officer Weiss. So again, with the issue of whether he specifically requested to speak to Officer Weiss, there's nothing in the record that indicates that Mr. Outland knew Officer Weiss. Officer Weiss was not the arresting officer in this event, so it's highly improbable that Mr. Outland could have specifically requested to speak to Officer Weiss if there's no evidence in record that he even knew who Officer Weiss was. That aside, in terms of making a more  to speak to law enforcement. Again, there's no record of that conversation. We don't know what led that officer to conclude that Mr. Outland wanted to speak to law enforcement. And moreover, we don't know when that conversation took place. There's evidence in the record indicating the improvement of Mr. Outland's condition in response to the medication. We don't know whether these conversations took place before that point of noted improvement or after. And because we don't have that evidence, the district court does not have sufficient evidence to simply disregard Mr. Outland's testimony on the question of whether he made the statement. So, by crediting the unsworn testimony, the out-of-court unsworn statement of an unidentified party, the district court fell short of its obligation to exercise every reasonable presumption against the constitutional waiver of his moratorium rights. And the state, the government, by failing to offer competent evidence of that conversation, failed to meet its heavy burden to prove the voluntariness of the statements given to law enforcement. Unless the court has further questions, that does conclude my presentation. Thank you, Mr. Brown. Mr. Cook? Thank you, Your Honor. May it please the court, I'm Keith Cook, appearing on behalf of the United States. The district court here correctly denied the defendant's suppression motion because he validly waived his moratorium rights and also because his statement, the statement itself, was voluntary. If I could address this question as to whether Mr. Outland requested to speak with a law enforcement officer, I would say first that, of course, the district court found, in fact, that he did. That's a factual finding that this court gives deference to. Secondly, whether Mr. Outland requested to speak with someone or not is really of questionable significance as to the voluntariness. For example, if a law enforcement officer had approached him, even if he hadn't requested to speak with one, and explained that the law enforcement officer would like to speak with Mr. Outland and explained his moratorium rights and then interviewed him, well, there's nothing coercive about that. And, of course, that's the touchstone for the voluntariness question is coercion. So, although the district court was correct to credit Detective Weiss's testimony in finding that, in fact, Mr. Outland did request to speak with the officer, it's not determinative per se because even if he hadn't, even if Mr. Outland had not requested that, a resulting interview would not be, per se, coercive and therefore involuntary. And to further delve a little bit deeper into the record as to Detective Weiss's testimony, how he was requested to come to the hospital and speak with Mr. Outland, that testimony that he learned Mr. Outland would like to speak with an officer came on direct examination from the defense at the hearing, if I recall correctly. And the defense, of course, didn't object on hearsay grounds or any other grounds as to how Detective Weiss learned that Mr. Outland wanted to speak with him. So, the district court properly found that Detective, excuse me, that Mr. Outland requested to speak with Detective Weiss and that his statement was voluntary. It wasn't the result of any coercion. In fact, the defendant conceded at the suppression hearing that the detective didn't use any kind of threats or intimidation. And by listening to the recording of the statement, we can see the kind of circumstances that the interview took place in. There's, it's just a conversational tone throughout the interview. Mr. Outland never seems to express any kind of fear. So, the district court was correct to find here that this was a voluntary statement. It's supported by the totality of the circumstances in the record. And although the defense doesn't address here the waiver question, I would like to just briefly outline some of the most important facts that this court can rely on in affirming the district court's decision here that the waiver was valid and that this statement was admissible against Mr. Outland. To the extent that the defense relies on any medication that the defendant received in arguing that he was intoxicated, well, that's a, that's a faulty premise. The record that the defendant developed at the district court and the defendant's exhibits at the district court suppression hearing showed that these medications, Narcan, Revia, Zofran, don't cause additional intoxication. Instead, they're designed to reverse the effects. Let me ask you a question on this part of the argument. In preparing for this morning, it's far from clear to me what we're reviewing here. And the reason I say that is because I don't see anywhere where the district court actually made a finding that the Miranda waiver was knowing and intelligent. Can you, can you point me to where in the district court's opinion that finding was made? No, your honor, I can't. And that's because you're correct that the district court's orders does not explicitly address whether the waiver was knowing and intelligent. So the question I have is, and you all, you do a fine job of it in your, in your brief of marshalling, you know, what's clear from the tape, et cetera, et cetera. But in a circumstance like this, have you, have you come upon any decision of our court where we undertake that finding in first instance, or alternatively where we've held that the lack of an express finding is effectively harmless? Have we ever done either of those two things in your knowledge? No, your honor, not in the cases that I recall. But I would say, however, that the court can affirm the district court here. And that's for, primarily for the reason that, of course, the government can argue for the affirmance of a district court order based on any legal conclusion supported by the record. And here, the district court, I think it's fair to say, did make factual findings that support that legal conclusion. In the district court's order, in the first few pages of it, where it summarizes the records that he submitted as an exhibit, that beginning at 1133, the defendant was... So, I'll tell you, let me tell you what worries me, okay? Yes, sir. What, what worries me is the law coming to include a lack of discipline, if you will, around the factual findings that are requisite on a Miranda waiver. A Miranda waiver has a very serious routeline here, very serious. And we don't have an express finding by the district court. Now, maybe on remand, it happens very quickly, if that's what we choose to do, for a lot of the reasons that we argue. But I'd like you to address whether you think the law should move in the direction that you're urging us with respect to either ourselves making these kind of factual findings, which will often turn upon credibility assessments, or otherwise somehow engaging in a form of harmless error review. So, I'm thinking actually quite beyond this case. Yes, sir. I understand the court's concern. And what I would say is that this court wouldn't have to make factual findings. It's certainly true that perhaps the district court could have been more explicit in addressing these facts. To some extent, its lack of explicitly addressing this is understandable in that the defendant's filings, and in fact, even the government's filings, sort of conflate these questions as to the voluntariness of the waiver. That's the problem. That's precisely the problem. The Miranda waiver and the voluntariness issues are distinct. Yes, sir. Yes, sir. Of course they are. But the district court did make factual findings, which this court could rely on. It wouldn't have to find facts in the first instance. And those facts would support the conclusion that the defendant was aware of his rights. And that's especially true given the fact that the recording, which is perhaps the most important piece of evidence, is in the record. It was before the district court, and the district court had it to consider when it rendered its opinion, its decision here. But those facts that it found, as I say, go to the conclusion that Mr. Outland understood. He was awake and aware for an hour and 43 minutes before he gave this statement to the law enforcement officer. The district court relied on the medical records to determine that beginning at 11.33, Mr. Outland was awake and coherent. He was oriented. And soon after that, about 40 minutes later, at 12.13, he was speaking clearly. So his situation, his mental state improved, and he remained oriented throughout the interview. There was no reason to believe he wasn't still coherent and understanding. So those factual findings allowed this court to reach the conclusion that Mr. Outland was aware, in fact, to reach the legal conclusion rather than it was a voluntary, excuse me, that it was a knowing waiver of his rights. So... Counsel, did the defendant raise the voluntariness in his opening brief? Your Honor, yes, he raised the voluntariness of his statement. That was clear. And of course, that was the focus of the district court proceedings. But on the next page, on page two, when he briefly explained his argument, he also addressed the waiver. And I see I'm out of time. If I could have a few more moments just to continue. Thank you, Your Honor. So he addressed in his brief both issues very briefly in a sentence or two. And then I think it's fair to say that the thrust of the argument at the suppression hearing was also the voluntariness, whether he was under some kind of coercive pressure to give his statement. So I think that's why it's reasonable that the district court focused on one over the other. I see I've run out of time. And so I would simply request that this court affirm the district court's decision. Thank you, Mr. Cook. Mr. Brown, I think... Did you have any time left? We've had about 40 seconds. I'll give you... I'll give you a whole minute at least. Thank you, Your Honor. By way of rebuttal, pointing out the district court's failure to make an explicit finding on the voluntariness of the waiver of Miranda, the two issues do rely on the same facts, primarily the level of intoxication of Mr. Outland. But also, as he testified, he felt intimidated and pressured by the fact that the officers showed up without him having requested to speak to the officer. And that brings us back to the issue of whether the district court applied the proper standard in disregarding his testimony when, on the basis of the statement of a party who wasn't before the court, wasn't sworn, not identified, and the contents of the conversation were not made part of the record. So for those reasons, we argue that the district court erred and should be reversed. Thank you, Your Honors. Thank you, Mr. Brown. Thanks to both counsel and the cases taken under advice.